EMPIRE FINANCE CO. v. ELLIOTT.

Ohio Appeals, 9th Dist., Summit Co.

No. 1356. Decided April 4, 1928.

First Publication of This Opinion.

Syllabus by Editorial Staff.

54. AGENCY—745. Malicious Prosecution —118. Automobiles.

Where in a prosecution for malicious prosecution against a used automobile company, it appears that a nonresident purchased a used car from a sales agent to whom he gave his check and after using the car returned same to the sales agent the same day, rescinded the contract and unsuccessfully demanded return of his check, later telegraphing that he had stopped payment of the check and after considerable correspondence with the local agent was informed that if he paid for the car promptly it would save blackening his character for issuing checks without money deposited to pay them, and that the sales agent then swore to an affidavit for arrest for issuing a check without money in the bank drawn on to pay it, such facts will justify an inference that maker of affidavit was acting as agent of company.

225. CHARGE OF COURT.

Failure to charge upon an important issue on trial is not fatal especially when counsel fails to call attention to it after the court has asked if he had omitted to charge upon any issue in the case.

978. PUNITIVE DAMAGES.

Punitive damages may be found in addition to compensatory damages if fraud or malice appear.

Error to Common Pleas.

Judgment affirmed.

Mather, Nesbitt & Willkie, Akron, for Empire Finance Co.

Lahrmer & Hadley, Akron, for Arnold Elliott.

STATEMENT OF FACTS.

Arnold Elliott sued the Empire Finance Co. and the Biteman Used Car Co. for damages for malicious prosecution. The separate answer of each defendant was a general denial. The Used Car Co. being in the hands of a receiver at the time of trial, made no defense. The case was tried to a jury, which returned a verdict for plaintiff in the sum of $2,200. Motion for new trial was filed and overruled and judgment entered upon the verdict. The Finance Co. is now here on petition in error seeking to reverse that judgment.

It is contended that as there is no evidence to show that Charles Biteman, who swore to the affidavit to arrest plaintiff, was or had been the agent of the Finance Co. generally or that there was any course of dealing between them other than the transaction concerned in this case, there is therefore no evidence that said Biteman was the agent of the Finance Co. authorized to sign and file the affidavit for the arrest of plaintiff.

FUNK, J.

Admitting that the record shows no evidence of general agency and that there is no evidence of any course of dealing, neither of which were claimed by plaintiff, and that it was incumbent upon the plaintiff to show that Charles Biteman was the agent of the Finance Co. in signing and filing the affidavit and that he had express authority to do so, it is not claimed that such agency must be proven by direct evidence, and it is conceded it may be proven by circumstantial evidence; in other words, that such agency may be inferred from the acts and conduct of the parties.

The admitted facts and evidence that should have been admitted in this case show that plaintiff, on Nov. 28, 1924, contracted, through Charles Biteman, for the purchase of an automobile belonging to the Finance Co., which it had repossessed from another purchaser, and gave his check for $75 payable to Charles Biteman as the down payment on the same. Plaintiff drove away in the auto and returned in about an hour to the place of business of said Biteman where he had contracted to buy the car, and had a conversation with said Biteman about the car not being as represented, which conversation the court, erroneously, we think, refused to admit, at least for the purpose of reflecting upon the question of probable cause.

Plaintiff offered to show what was said in this conversation about what was wrong with the automobile; that he rescinded the contract and demanded his check back and what said Biteman said in reply; part of which reply was that "You can't be honest in the used car business and make any money," and "You have bought something, I have got your check." However, it appears from the telegram sent to plaintiff the next day (Nov. 29), signed by Charles Biteman, that plaintiff left the automobile with Biteman and rescinded or refused to go on with the contract.

It is further admitted that plaintiff, on the next day (Nov. 29) after the check was given and the automobile returned to Biteman, telegraphed to Biteman that he had stopped payment on the check. It being admitted that Charles Biteman, who sold this automobile, was the agent of the Finance Co. in selling this automobile, the Finance Co. was bound by the information its agent had concerning why plaintiff refused to take the automobile and the stopping of payment on the check. Notwithstanding this knowledge that plaintiff refused to take the car because he claimed the automobile was not as represented and had stopped payment on the check, said Biteman turned the check over to the Finance Co., and one or the other deposited it for collection and it was protested because plaintiff had stopped payment, according to the testimony of the cashier of the bank on which it was drawn, although both the letter of Charles Biteman and that of the Finance Co. state it was protested for insufficient funds. The check, certificate of protest and notice of protest, for some unknown reason, were not in evidence.

Duplicate bills of sale for said automobile, dated Nov. 29, 1924, were sent to plaintiff by mail, showing the Finance Co. was the owner of the automobile and the sale by it to plain-

tiff. Thereafter, on Dec. 11, 1924, said Biteman, who was the manager of The Biteman Used Car Co., wrote plaintiff, on the stationary of said Car Co., the following letter:

"We are still holding Chevrolet car which we expect you to take. The car has been repaired, and we have spent $36.26 on the car.

"You gave us a check, which was returned to us for non-sufficient funds. We are going to give you till December 15, '24, to make this check good, or I will file charges at once."

It will be observed that this letter shows a practical admission that the automobile was not as represented when he says he put $36.26 repairs on it, as it may be inferred, from the conversation with Biteman when plaintiff returned the automobile, that these repairs were made in an effort to make it as represented.

Nothing more, apparently, was done by either party until Jan. 17, 1925, when the Finance Co. wrote plaintiff this letter:

"You gave a check for $75 to Charles Biteman and he in turn gave it to us. At the present time, we are holding the check which has been protested for the lack of funds. Now you know what the law is in this state for giving a check without funds in the bank. Several have been sent 'over the road' from Akron lately for this same offense. You numbered this check 24 and due it Nov. 29.

"We will wait one week longer for you to send the money for this check. If we don't get the money from you at that time, we will place it in other hands for attention.

"We don't like to blacken your character or cause you unnecessary expense, but this is the only thing we could do. Let us hear from you immediately."

And on Jan. 22, 1925, the Finance Co. wrote plaintiff this letter:

"You have three notices regarding the first payment of $29 due on the note you gave in the purchase of your car. We must have something on this immediately.

"You will find it to your best interests to give this immediate attention."

It was admitted that both of these letters were written by The Empire Finance Co., signed "The Empire Finance Co., by J. B. Merriman"; that they were written on stationery containing the printed letterhead of "The Empire Finance Company" showing "J. B. Merriman, Assistant Treasurer and Local Manager," and that they were received by plaintiff through the mail.

Counsel for defendant, on page 16 of the record in the opening statement, admit that "the sole question in dispute is as whether or not Charley Biteman was acting as an agent for The Empire Finance Company."

From these admitted facts and the evidence refused but which should have been admitted, let us look at the setup or picture we have before us and what are the reasonable inferences that may be drawn as to the agency of said Biteman.

We do not think, under the evidence in this case, that it can be successfully maintained that it is an unreasonable inference to find that the Finance Co. instructed said Charles Biteman to file said affidavit, but on the contrary it would seem to be the only reasonable inference to be drawn, especially in the absence of any other evidence to show that the Finance Co. did not so instruct Biteman and that he acted upon his own responsibility.

It is contended by counsel that the court failed to define agency.

It will be observed that at the close of the general charge there was some question raised about the court's charge upon this very question, and that the court then said to counsel for defendant, "Now, here, Mr. Willkie, have I omitted any point?" and counsel said he had and called the court's attention to the necessity of charging upon the question of express authority being given to the agent; when the court agreed with counsel and charged as requested. Counsel made no further request of any kind either about agency or probable cause. Under this situation and the well known rule where counsel fail to call the court's attention to any omissions, and especially after being asked if any point had been omitted, we find no prejudicial error in this particular.

Counsel further contend that the failure of the court to charge upon the question of probable cause was error prejudicial to the defendant, even though counsel failed to call the court's attention to such omission.

We are of the opinion that under the record in this case, it was not error prejudicial to defendant for the court to fail to charge upon the question of probable cause, especially when counsel failed to call the court's attention to such omission after the court had asked if it had omitted any point and counsel had stated, during the trial, that the sole issue was whether or not Biteman was acting as the agent of the Finance Co.

Another error complained of in the charge is that the court erred in charging that plaintiff was entitled "to a reasonable compensation for his attorney in prosecuting this action," and that the charge upon the subject of punitive damages is clearly erroneous under the rule laid down in Col. Ry. P. & L. Co. v. Harrison, 109 O. S. 526, and Tracy v. Athens & Pomeroy Coal & Land Co., 115 O. S. 298.

The contention being, first, that the court charged that counsel fees could be added by way of compensatory damages, if agency was found, without any reference to whether the elements of fraud or malice were involved so as to permit the allowance of punitive damages, and second, that it was error to charge that the jury might allow exemplary or punitive damages for the reason that there was no allegation in the petition nor any evidence adduced tending to show that the Finance Co. directed, ratified or acquiesced in the act of filing the affidavit for the arrest of plaintiff, and that a corporation cannot be held to answer in punitive damages in the absence of such evidence.

In the instant case, we have a manager signing a bill of sale for the automobile in question and trying to force the completion of the contract which plaintiff claimed to have rescinded, by writing threatening letters.

It is not claimed that these acts were not within his duties as manager, nor is it claimed that as manager he was not clothed with wide discretion in handling the company's business

and in collecting amounts due it; and it surely cannot be claimed that if there had been no dispute about the automobile not being as represented and plaintiff had kept it and the check had actually been given without funds in the bank to meet it, that Merriman would not have had authority to write the letter he did and sign and file the affidavit to have plaintiff arrested, the doing of which would no doubt be within the discretion of such manager; so that the only thing that it can be claimed that was done by Merriman without authority was in exercising his discretion in directing the affidavit to be filed after he knew or should have known that plaintiff had returned the automobile, rescinded the sale and that the check was protested, not because of insufficient funds, but because payment had been stopped by plaintiff because he had rescinded the contract.

It is thus apparent that the character of Merriman's agency was in the nature of his acting as the Finance Co.'s "alter ego" when he used poor judgment in exercising a discretion conferred upon him, and as there is no evidence that said manager ever saw plaintiff, and it appearing that his only communication with plaintiff was two letters written by him to plaintiff, it cannot be said and indeed it is not claimed that his acts were for the purpose of gratifying any personal malice or animosity, so the conclusion must be that his acts were those of the Finance Co. itself; and it therefore cannot be said that the Finance Co. would not be liable for punitive damages if its manager, Merriman, had sworn to and filed the affidavit in question. It therefore follows that if the Finance Co. would be bound by the act of Merriman swearing to and filing the affidavit, and from all the facts and circumstances it would not be an unreasonable inference that he directed Biteman to do so, then there can be no question as to the authority of Biteman to do so and the liability of the Finance Co. for punitive damages.

Furthermore, while the court may not have charged as accurately and fully and in such logical sequence as it perhaps should have done, there can be no doubt from this record but what the prosecution was malicious and that the agency was such that the Finance Co. was chargeable with knowledge of all the facts and circumstances leading up to it; and if, as we believe it is not an unreasonable inference to draw from the facts and circumstances in this case, that the Finance Co., through its local manager, did directly authorize this affidavit to be filed, it is immaterial whether the court charged on the question of counsel fees in the proper place or in the proper connection in the charge, or put it in some other place. It must be remembered that this is an action for malicious prosecution, and in interpreting the language of the court it should not be forgotten that when an alleged malicious prosecution is shown to be without probable cause, malice, being an essential part of such charge, is presumed without definite proof to that effect. In other words, malicious prosecution cannot exist without the element of malice, and so long as the element of malice is not entirely overcome, by showing probable cause. and the agency is such that the corporation is chargeable with responsibility for the act of the agent. the rule of damages laid down in Roberts v. Mason, 10 O. S. 278, applies; that is, compensatory damages, including reasonable counsel fees, and in addition, if the jury sees fit, exemplary damages, may be given. We, therefore, find no prejudicial error in the charge in this particular.

However, if we are wrong in all that we have said concerning punitive damages and the charge of the court on the subject, in the absence of a special finding by the jury as to the amount of compensatory or punitive damages allowed, we cannot say, from the amount of the verdict, that the jury included any punitive damages; in fact, we are of the opinion that, under the aggravated circumstances of this case, as disclosed by the record, that no punitive damages could have been included.

Finding no prejudicial error, the judgment is affirmed.

(Washburn, PJ., and Pardee, J., concur.)